## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **TIMOTHY BERNARD SR** | **CASE NO.  6:25-CV-00250** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **LA DEPT OF TRANSPORTATION & DEVELOPMENT ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court are the following motions referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court:

- Motion for More Definite Statement, Motion to Dismiss for Insufficient Service of Process, and Motion to Dismiss for Failure to State a Claim upon Which Relief Can be Granted filed by Defendants, the State of Louisiana through the Department of Transportation and Development (DOTD) and State of Louisiana through the Department of Health (DHH) (collectively at times, "the State Defendants") (Rec. Doc. 9).

- Motion to Dismiss Pursuant to FRCP 12(b)(6) or, In the Alternative, Motion for a More Definite Statement Pursuant to FRCP 12(e) filed by Defendant, Lafayette City-Parish Consolidated Government ("LCG") (Rec. Doc. 11)

- Plaintiffs, Timothy Bernard and Sheman Bernard, proceeding *pro se*, opposed the motions. (Rec. Doc. 13). LCG and the State Defendants replied (Rec. Doc. 16 and 19).

Considering the evidence, the law, and the parties' arguments, and for the following reasons, the Court recommends that Defendants' motions be granted.

**Facts and Procedural History**

Plaintiffs, proceeding *pro se*, filed a Petition for Injunction in state court in January 2025 seeking to prevent a "sidewalk project" until a matter involving an allegedly hidden sewer line on their property is resolved. The Court gleans from their allegations that they fear the sidewalk project will cause water contamination and other damages from allegedly broken "systems," presumably connected to or including the sewer line on their property. (Rec. Doc. 1-2). Though styled a petition for injunction, Plaintiffs appear to seek damages for negligence and for an unconstitutional taking. Based on Plaintiffs' claims for equal protection violations and unconstitutional taking, Defendants removed the matter to this Court (Rec. Doc. 1), and now move for dismissal on several grounds.

Key to Defendants' motions is Plaintiffs' litigious history involving utilities and related servitudes on their property at 1224 Carmel Drive. Defendants attached the following public records to their motions:[1]

- In 2010, Plaintiffs filed a Small Claims Petition in the Fifteenth Judicial District Court ("JDC") of Louisiana against LCG and then Mayor-President Durel for damages caused by a poor drainage system and sinkhole. The matter proceeded to trial, at which Plaintiffs "pled the Fifth Amendment" and refused

---

[1]    Ordinarily, in ruling on a Rule 12(b)(6) motion, the court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims (*In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007)), as well as public records and any evidence of which the court may take judicial notice. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011).

to put on any evidence, such that Judge Marilyn Castle dismissed their claims with prejudice. (Rec. Doc. 9-2).

- In 2013, Plaintiffs filed suit in this Court for "illegal taking, misuse and appropriation" of their land. They alleged they had no knowledge of any "systems being operated on [their] land." Judge Doherty dismissed the claims without prejudice for lack of subject matter jurisdiction. (Rec. Doc. 9-3).

- In 2015, Plaintiffs filed a §1983 civil rights suit in the Fifteenth JDC against LCG, Lafayette Utilities Services (LUS), the Lafayette Police Department, and DHH following an October 2014 incident. They alleged LUS dumped dirt on their land "without paperwork," and officers were ordered to attack their family. The police report states several subjects were attempting to block LUS access to the property, and two suspects, including Timothy Bernard, were arrested. Mr. Bernard was given a misdemeanor citation for criminal mischief, battery on a police officer, and resisting an officer. Among various allegations in a "Motion to File Pleadings for Fraud," Plaintiffs complained about "hidden systems" and land contamination of their property. Following a hearing, the court dismissed the case after Plaintiffs failed to cure deficiencies in citation and service. (Rec. Doc. 9-4).

- In April 2017, Plaintiffs filed a possessory action suit in the Fifteenth JDC in which they claimed LCG possessed "several systems" which were "broken and [] causing health and safety concerns and concerns of water contamination." Plaintiffs asserted a right to know about information "due to these Broken systems (Broken Cesspool, Broken Wastewater Treatment Facility, and Broken Septic system all connected to said tract of land as well as Water Mains for the parish…" Plaintiffs moved to recuse Judge Rubin from the case, but he found no grounds for recusal. Other than an order denying Plaintiffs' request to re-set a hearing, the record contains no further evidence regarding the case's conclusion. (Rec. Doc. 9-5).

- In October 2017, Plaintiffs filed a civil rights suit in this Court against a utilities director, a sanitation director, the Fifteenth JDC clerk of court, and three local judges who were involved in their previous suits. This suit, too, asserted various allegations regarding the "broken sewer" and "systems" on their land and claims apparently related to the October 2014 incident. This Court dismissed the case as frivolous and for failing to state a claim. (Rec. Doc. 9-6).

3

- In November 2018, Plaintiffs filed a Petition for Expropriation, etc. against LUS and LCG in the Fifteenth JDC asserting claims based on a second blow-out of the same line. Like the previous suits, the petition is based on allegations regarding sewage and utilities ("broken systems") apparently in a servitude on their property. Following a bench trial, the court ordered LCG to fill the sinkhole resulting from the rupture of its water line at Plaintiffs' property and to fill a certain valve with concrete. LCG was permitted to temporarily remove Plaintiffs' fence to complete the work. Plaintiffs were ordered not to interfere with, impede, obstruct or harass LCG in its work and were assessed with all costs of the proceeding. (Rec. Doc. 9-7).

- In October 2023, Plaintiffs filed another suit in the Fifteenth JDC against La. DOTD and LCG asserting claims based on a broken valve and again related to the 2014 incident. In May 2024, the court dismissed the suit on the grounds of res judicata. (Rec. Doc. 9-8).

The instant suit is Plaintiffs' eighth suit related to the utilities on their property. Defendants move to dismiss Plaintiffs' claims based on res judicata and for otherwise failing to state any claim upon which relief can be granted.

## Law and Analysis

### I.    Rule 12(b)(6) and standards applicable to *pro se* litigants.

The defendant may challenge the complaint for failing to state a claim by filing a motion to dismiss pursuant to F.R.C.P. Rule 12(b)(6). When considering a motion to dismiss for failure to state a claim, the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the

plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007).

Conclusory allegations and unwarranted deductions of fact are not accepted as true.

*Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050

(5th Cir. 1982); *Collins v. Morgan Stanley*, 224 F.3d at 498. The law does "not

require heightened fact pleading of specifics, but only enough facts to state a claim

to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,

127 S. Ct. 1955, 1974 (2007). The allegations must be sufficient "to raise a right to

relief above the speculative level," and "the pleading must contain something more

…than…a statement of facts that merely creates a suspicion [of] a legally cognizable

right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and

Procedure § 1216, pp. 235-36 (3d ed. 2004)).

The pleadings of *pro se* litigants are held to a more lenient standard than those

of attorneys and are construed liberally to prevent a loss of rights that might result

from inartful expression. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir.

2002). However, *pro se* plaintiffs are required to plead factual allegations that rise

above a speculative level, and courts should not create causes of action where none

exist. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). A

*pro se* litigant should ordinarily be offered an opportunity to amend his complaint

before it is dismissed but leave to amend is not required if an amendment would be

futile or if, in other words, an amended complaint would still fail to survive a Rule

12(b)(6) motion to dismiss. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020); *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014). Furthermore, *pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Litigants who abuse the judicial process are "not entitled to sue and appeal without paying the normal filing fees – indeed, are not entitled to sue and appeal, period." *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir. 1989).

## II.    Whether res judicata bars this suit.

Considering Plaintiffs' multiple prior suits related to the utilities on their property, the Court first considers whether res judicata bars the instant action.

> The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion. Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. In order to determine whether both suits involve the same cause of action, this Court uses the transactional test. Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. What grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment

6

> as a unit conforms to the parties' expectations or business understanding or usage. If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. The critical issue is whether the two actions are based on the "same nucleus of operative facts."

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (cleaned up).

First, the parties in this suit have each appeared in one or more of Plaintiffs' prior suits. Of course, the prior matters were resolved in courts of competent jurisdiction; however, regarding the third factor, only the 2017 federal court matter and the 2018 state court matter appear to have reached a final judgment on the merits. The only remaining question is whether the 2017 and 2018 suits involved the same claims as the instant suit.

In the 2017 suit, Plaintiffs sued Terry Huval as "director of utilities" and Mike Vidrine as "director of sanitarian services" and DHH director. (Rec. Doc. 9-6, p. 1-2; 5). Considering the nature of Plaintiffs' claims in the 2017 suit and the instant suit, the Court finds that current Defendants, LCG and DHH, have sufficient identity with Huval and Vidrine for res judicata purposes. See *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992). Regarding similarity of the claims, in 2017 the court provided the following interpretation of the complaint: "While the Complaint does not allege any dates, nor set forth any specific factual allegations, a review of the presumptively reliable published jurisprudence of the State of Louisiana reveals that

7

in October 30, 2008, [Lafayette] Consolidated Government completed drainage improvements on the Bernards' property, which they allege caused erosion and a hazardous sink hole." (Rec. Doc. 9-6, p. 1). The court noted Plaintiffs' prior suits for damage to his property due to construction of drainage adjacent to the property and referenced correspondence from DHH. The correspondence, which Plaintiff attached to the suit, confirms Plaintiffs' issues concerned LUS's easements, allegedly "broken systems," and sewage complaints. (Rec. Doc. 9-6, p. 7, referencing Case No. 6:17-cv-01326 Rec. Doc. 1-1, p. 7-13). The court dismissed Plaintiffs' claims as frivolous and for failing to state claims.

Plaintiffs alleged in the 2018 Petition for Appropriation that a main water line blew out in October 2014 and again in January 2018. (Rec. Doc. 9-7, p. 1). They claimed LCG, DHH, and LPD were untruthful about the blow out(s), and slandered/defamed them. (p. 2). They took issue with the servitude and noted that Mrs. Bernard had a permanent injunction and restraining order against her, banning her from contacting DHH "due to broken sewer and waste connected to the land." (Id.). They wanted the "broken systems" repaired or removed. (p. 3-4). Following a bench trial, Judge Castle ordered LCG to fill the sinkhole resulting from its ruptured water line and to fill a certain valve with concrete. Plaintiffs were ordered not to interfere with, impede, obstruct, or harass LCG and were cast with all costs. (p. 5).

In the instant suit, styled a Petition for Injunction, Plaintiffs purport to stop a sidewalk project; however, careful review of their allegations and opposition show their claims are based on the sewage line. They allege, "the location of this System main completely puts The Bernards at risk of Water, health and safety issues." (Rec. Doc. 1-2, ¶4, as written). They further allege "[t]he Actions of past incidents, litigations, false charges with a wide array of lies intended to and selectively hindered, restricted and damaged the easements of the Plaintiffs land through abandonment of broke systems in place." (¶5). They challenge state and city laws and regulations permitting operation of the sewer main. (¶6). They claim, "this sewer main is right next to our water main which is next to a broken abandoned waste main." (p. 3). These vague allegations are reminiscent of many of their prior complaints regarding "broken systems," and are particularly similar to the 2017 claims which the court dismissed as frivolous and for failing to state claims. (See especially DHH correspondence at Case No. 6:17-cv-01326 Rec. Doc. 1-1, p. 7-13.) Thus, to the extent Plaintiffs' current claims are based on alleged problems with the sewage system, the Court finds that res judicata justifies dismissal. To the extent Plaintiffs challenge the alleged sidewalk project, their opposition clarifies that the basis of their claims is the underlying system—not the sidewalk project. (Rec. Doc. 13). The court previously held such claims were frivolous and unsupportable.

Having found res judicata decisively resolves Defendants' motions, the Court declines to consider Defendants' other grounds for dismissal.

## **Conclusion**

For the foregoing reasons, the Court recommends that Defendants' Motions to Dismiss (Rec. Doc. 9 and 11) be GRANTED and that Plaintiffs' claims be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 27th day of May, 2025.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE